Good morning, Council. Good morning, panel. My name is Jaime Leanos, and I represent the Plaintiff Appellate in this matter, J. L., who is a minor. This is a unique case, as shooting cases go. And the reason why I say it's unique, because we have a situation where the non-shooting officer is the person giving the order to the shooting officer to shoot him. And why it's unique is because at the time the shooting officer shoots the decedent, he was actually in the process of trying to tase the decedent. He had his taser out, and he was immediately behind the subject, and he had a clear view of what was transpiring in front of him. And based on where the decedent was running, he had not pulled out his firearm, he had pulled out his taser, and he couldn't activate his taser because he forgot to remove the safety. It's only when the non-shooting officer, who is retrieving after having it effectively tased the decedent, decides to lower his taser, raise his firearm, and shoot. The question then becomes, was he responding to what he saw transpiring in front of him, this person running into the street, in the general direction of the officer? Or was he responding to the other officer's command of, shoot him, shoot him? In addition to that... I'm not sure that's an either-or question. Exactly. Which makes it a question of fact. Well, no. I mean, we've seen the video. Yes. It's not hard for me to understand both why the officer who felt he was in danger called out to shoot and why the other officer, hearing that and perceiving what he was perceiving, agreed that the first officer was in danger and decided to shoot. That doesn't make it a genuine issue of material fact. Well, I think it actually goes to why the officer who's doing the shooting decided to shoot. Why didn't he have his firearm? Because the other officer appeared to be in serious danger. If you look at the video, and actually you look at the photo of the appellee's brief on page 11, it actually shows that the decedent was running off to the right and the officer's to the left. I don't think so. I looked at it. The district court looked at it. I think the district court's description was pretty accurate. Okay. And the fact that the shooting officer had his taser out at the time the person, the decedent, was running into the street indicates to me that he didn't think it was a life or death situation. Otherwise, he would have had his firearm. Wait, wait, wait. If he tries to start with nonlethal force, how is that an admission that lethal force could never be necessary? Lethal force could be necessary, and that's why the, but he doesn't decide. The taser didn't work. Well, it did work. Well, the first officer's taser, it's not clear to me why it didn't work. The second officer didn't turn off or remove the safety. But his problem was you've got a guy with what appears to be a serious blade running toward in the direction of the other officer, and what are you supposed to do? He may not have made the best judgment, but I have a hard time understanding how that judgment was constitutionally deficient. No. And I understand that point, Your Honor. But we can't just look at what you see from the one video, because when you say the other officer activated his taser, he did. And it slightly jolted the suspect. And then there's a question of, well, then did he attack the officer or did he attempt to flee? And unfortunately he didn't attempt to flee as in running an entirely different direction or dropping to the ground. That is correct. So it becomes a judgment call on the part of the officer. Now, you can argue and you have argued he's actually veering in a different direction. But at least from the perspective of the officer who felt in peril, because that's whose body cam we have, it's real easy for me to understand why that officer did not perceive the victim to be running off in a way to avoid this. He was still headed in the general direction of the officer. And I understand, Your Honor. And I think if you have a situation where the officer is closed in, has nowhere else to retreat, then that is obviously an option that needs to be exercised. But this officer who was retrieving had a street behind him and had plenty of space to retrieve, including vehicles that were nearby. That would prevent having to resort to the ultimate use of force. Kennedy. Do you think there's a duty to retreat on the part of an officer when being essentially approached in a very threatening way by an assailant? Under certain circumstances, under certain circumstances where it's safe to do so, yes. Are you talking about for the purposes of your constitutional claim or your negligence claim? I think it applies to both, actually. And what is your case law for the constitutional proposition? Well, because you must be in immediate threat or death or bodily injury at the time. And the fact of the matter is having a 13-inch blade, 14-inch blade, 15-inch blade, in and of itself, is not an immediate threat of death or great bodily injury. If you're using that weapon and in a threatening manner or a manner that's going to cause great bodily injury or death, yes, it becomes an immediate threat. A perfect example are shooting cases where people might have firearms, but they're not aiming their firearm, they're not using it, they're holding it, and they're telling them drop it, drop it, drop it. They can't fire just because that person possesses the weapon. It has to be an immediate threat of fear or death. Can I go back to your initial argument? Because I'm not so sure this is consistent with what I thought you were arguing in your brief. In your brief, you're basically suggesting that the decedent was moving away. Yes. Moving not toward the officer, moving away. And as a result, it was inappropriate to use deadly force. In your argument, when you just started, what you're basically suggesting is that the person who did the shooting, the officer who did the shooting, only did so not because of necessarily a fear that there was going to be an assault on the other officer, but because the other officer said shoot him. Yes. Is that what your position is at this point? Are you do you have evidence to suggest that the first officer only shot the decedent because he was told by the second officer to shoot him? If you look at the video and play it slowly, you'll see, and it took me four or five times to watch the video to actually see this. He has his taser out with his left arm, and he's attempting to tase the suspect as he's running away into the street in the direction of the officer. However, for some reason it doesn't work. When the second officer, the non-shooting officer, is retrieved and he says shoot him, shoot him, he then lowers his taser, and you can see it from the appellee's brief, and he raises his firearm. So he doesn't raise his firearm or even begin to use his firearm until after he's directed to do so by the second officer. And after the taser has not worked. Yes. Well, the first taser activated and it stunned him, but it didn't stop him. After his taser, which it didn't work because the safety was still on. Yes, the safety was still on. But that seems to me the key event. And if the taser had worked properly, in theory at least, the ultimate victim is incapacitated and the risk goes away, but when that doesn't work. Although he had a backpack on. I'm sorry. I'm sorry. I was trying to listen to your question. But when it doesn't work, what's illogical about the officer who ultimately did the shooting saying this weapon isn't doing it, I've got to go to option number two, which happened to be the real firearm. I really don't understand your argument that somehow he had made an election that shooting wasn't necessary. The officer who ultimately did the shooting, and maybe I should get their real names. Santos. Sergeant Santos did the shooting and Vander Hoek was the non-shooting officer. So Officer or Sergeant Santos is the one who had the taser that didn't work because of the safety. Yes. And then lifts his arm and fires a real gun and ultimately fatally shoots the victim. And you've told me this sequence, taser first, doesn't work, gun, and I'm trying to figure out what's remarkable about that. What would be remarkable about it, Your Honor, if he actually is directly going at the officer, it would be a legitimate shoot. If the person is running away, however, or the person is not going directly at the officer and he's just trying to escape or get away from after being tased, fearing that something's going to happen to him, then I don't believe it would be a justifiable shoot. Well, now we've come back to the argument that your brief appeared to present, and I have to say, looking at the video, I just don't understand how that argument gets any traction because at least from the perspective of Officer Vander Hoek, man, a guy's got a blade like that, he's coming generally in my direction. I'm not surprised he yells, shoot. No, I don't know exactly what it looks like from the other side from Sergeant Santos, but it's got to look pretty much like the mirror image of what we saw in the video, and I'm not surprised that he decides, look, that's too close for comfort. I'm going to shoot. Your Honor, I don't believe that that necessarily holds water because Officer Santos was directly behind Mr. Lopez, so his camera would have had an exact view of where he was in relation to the officer. Officer Vander Hoek, the non-shooting officer, was off to the side retreating into the street, so I don't believe that Sergeant Santos' camera would have shot him. Well, but the victim had gone into the street, too. The victim didn't stay on the sidewalk. Yes. He was trying to get into the street as well, Your Honor. So I'm really lost here. How is it? I mean, this seems to go back to the argument presented in your brief, that is, that Officer Vander Hoek was not really in danger. And if somebody's not in danger, there's a basis to say it's not appropriate to use deadly force. But if somebody is in danger, if there's the danger of death or serious bodily injury, the law permits the use of deadly force. And having looked at that video, I just do not understand how it could be said that Vander Hoek was wrong or Santos was wrong in concluding that there was a legitimate serious danger of death or serious bodily injury. Yes. Unless Vander Hoek panicked or overreacted to the situation because he was in danger. Well, I'm not talking – well, and, you know, he's reacting in seconds. He's had – doesn't have the time that we've had to go back and forth. And even saying that and even watching that video more than once – and it's sobering because we – as we watch it, we know the ultimate result and we know that we're watching somebody shot to death. So – but how else – well, I guess I've – I guess we can get into other issues in the case, though, in terms of how else do you handle that situation because the decedent was mumbling to himself. He was acting strangely. The officers noticed that he was out of it. So there is the crisis intervention training where they're supposed to put down their firearms and attempt to have a conversation before the situation escalates. Somebody's coming at me with a blade. You know, if I try to have this crisis intervention, two seconds later the guy's got the blade against my neck, I'm not sure that there's any case law that supports the proposition that the officer is required to take that course. Well, I agree. The person is – the person who was shot did not flee or run into the street or take off in any direction until after he was tased. If there had been an attempt to discuss this and see if he would comply in any way prior to being tased, perhaps it could have been avoided. But as you said, it happens very rapidly. I would – I wanted to reserve – I didn't say that. We're at 252. Is it okay if I reserve? Yes, thank you. Unless you have other questions. I was just – I was interested in your negligence. You brought a negligence claim. Yes. But the negligence claim was related to the actual shooting. So I assume that you agree that you look at the totality of circumstances and then you put all of those circumstances together to make a determination as to whether there was negligence at the time of the shooting, not necessarily at the time of the confrontation with Mr. Lopez, or the lack of taking procedures to make sure that you calm the situation. Yes. Do you agree with that? Yes. And there's also the Hayes case on prior conduct prior to the shooting. So, right, under Hayes, I'm not sure you mean to – I'm surprised that you just said yes, because I thought Hayes tells us we look at the whole course of conduct, not just the shooting. That's what – that's what Hayes says. No, I didn't mean to suggest that that was not the case. Right. Yeah. Okay. But it's the totality of circumstances and, in particular, how it impacts the decision to shoot. The totality of circumstances must be considered. Thank you. Thank you. Good morning, Your Honors. May it please the Court. I'm Anne Gourneau, appearing on behalf of Defendant Sergeant Michael Santos and Officer Fritz van der Hoek. The circumstances of this case are tragic. However, in this case, both defendants acted reasonably and violated no clearly established constitutional right. On appeal, plaintiff claims that Antonio Lopez's Fourth Amendment right against – for deadly force was used against him. But that right has to be evaluated objectively. Qualified immunity is granted to a police officer under the first prong when an officer has probable cause to believe that there is serious – a threat of serious physical harm to officers or others. And when evaluating qualified immunity under the first prong, the most important factors are the seriousness of the crime, the immediacy of the threat, and whether they were resisting arrest. In this case, all three factors were met. What was the seriousness of the crime? It was – as Judge Koh found, Mr. Lopez had been previously spotted on the campus making stabbing motions with an overfoot long blade. That's a felony offense, and it's on a campus during broad daylight when there are students around. Say we agree with you on the constitutional claim. Could you speak to the negligence claim and why a jury couldn't find that the officers acted unreasonably in the full course of conduct here? Yes, Your Honor. As was pointed out previously, when evaluating a negligence case under California court law, the totality of the circumstances are evaluated, but there is no separate pre-shooting duty separate from making the decision to use deadly force unless that results in a separate injury. So in this case, as said, all that we're looking at is the totality of the circumstances resulting in the ultimate shooting. But wouldn't the totality of the circumstances include whether there was an opportunity to de-escalate the situation and whether reasonable officers would have de-escalated or at least attempted to de-escalate the situation? I think that's true, but in this case, I think that's what happened. What did the officers do to de-escalate this situation? So prior to arriving – prior to spotting the suspect, all that Sergeant Santos knew was that there was a person with a knife that had been on campus. Plaintiff has cited two evidence of a student – But at least one of the officers testified that it was clear something was wrong with his mental state, correct? As the situation had unfolded. So when the officers got there, when the plaintiff had been down on his knees, he was initially complying, understood the commands. That's a very low level of force, trying to ask him to drop to his knees and drop the weapon. At that point, he jumped back up with the weapon in hand, and they continued to try to use alternative force. Sergeant Santos continued to ask him to drop the weapon, to drop to the ground. Officer Vanderhoek tried to use the taser to avoid using greater force. Sergeant Santos tried to use his taser as well, and when nothing else worked, and when the suspect continued to charge into the street, even at the point of the street, he could have gone right or left in the opposite direction of Officer Vanderhoek. They had already used three kinds of alternative force. So from the very beginning, though, like with the kneeling, could the officers have spoken more gently? I mean, aren't there things that the plaintiff's expert says the officers could have done, and why couldn't a jury believe that those were things that should have been tried? There's no evidence that the plaintiff was mumbling or doing anything at that point. All we know is that he was down on his knees, so he understood and was complying with the instructions. And at some point, he chose to stop complying. He was resisting arrest, which is one of the factors under the California Penal Code that justifies the use of the homicide. So there was no reason for the officers to have behaved any differently in how they came up. So, I mean, a jury could find that. You may win. But why isn't there a fact dispute about what the reasonable officer would have done in this situation, particularly given that there's expert testimony saying that this wasn't reasonable? So the expert testimony is entirely based on the fact that the expert assumed that there was a mental disability. There is, was, and has never been any evidence of a mental disability in this case. Zero. Well, the officers thought something was wrong with him mentally. Which turned out to be the fact that he was on methamphetamine drugs. And are we allowed to use that later knowledge in hindsight? Do you have a case that says that we use that retroactively? But the fact that he was dangerous and had a mental disability, as was pointed out before, someone has a knife in their hand, just because they have a mental disability does not mean the officers can then back down from an armed suspect moving towards them in broad daylight right off of a campus where there have been spectators or pedestrians. You could see them in the video. This isn't a contained situation where it's already safe. He's not in a room. He is out on a sidewalk in public where there's plenty of people around. He has a backpack on. We don't know what's in the backpack. He's not complying with any of the rules. And as far as you can tell from the video, he doesn't start mumbling until he has that knife in his hand and he's already resisting arrest. At that point, there's nothing else that they could do than the reasonable methods that they took. Can I just ask you a hypothetical situation? Let's say the – and I think in part it's true here. There's an obligation to try to de-escalate the confrontation. And the police have all of these requirements that they go through to try to do that, and in particular with mentally distressed or disturbed persons. Let's say they're negligent in the way they approach that de-escalation. The fact is everything contributes to a fervor, and as a result, all of a sudden they're faced with a situation of deadly – of the need for deadly force. They may be negligent early on, but when the relevant decision is to be made, that is, do in – confronted with this dangerous situation, do they shoot, that's the point at which negligence is most clearly evaluated, isn't it? And even though there may have been negligence early on, which contributed to the friction, the fact is when they're faced with a deadly situation, they have the right to shoot. Is that your position? Yes, Your Honor, because at the time – the first times where you can even see any muttering, as mentioned by the plaintiff, he already has the 10-inch blade in hand, over 10-inch blade in hand. It's already dangerous and getting more dangerous by the second. As was pointed out, this is happening over a period of seconds. So that Officer Vanderhoek tried to use intermediate force. He did not immediately go to lethal force. He didn't interrupt Santos's continued nonstop directions to drop to the ground and drop the weapon. Mr. Lopez could have dropped the knife at any time. There was nothing keeping him from doing that. He could have gone in a different direction. So at the point where the muttering begins and it's possible any different tactic could have been used and any argument that anyone could have known there's something mental going on, it's already too dangerous. He has the blade in his hand. He's in a crowded area. And at that point, there's nothing they can do other than continue to try to use lesser force until it's no longer possible because of the danger to Officer Vanderhoek, who, meanwhile, also was backtracking and retreating as quickly as possible. You know, this – Kennedy. Can I ask you about your response to the opposing counsel's statement at the very beginning of his argument that really he suggested that perhaps Sergeant Santos shot not necessarily because he felt there was a dangerous situation, but because Officer Vanderhoek said, shoot. So I have – Had you heard that argument before? And if so, how do you respond to that? I have not heard that argument before, but I will respond in that I have two responses to that, one of which is that Sergeant Santos' deposition, he states clearly, by the end when he shot, he was in fear for Officer Vanderhoek's life as well as his own. He said, if Officer Vanderhoek goes down, it's me and him, and we're not having any luck controlling this man. He was in fear for both of their lives, regardless of what Officer Vanderhoek said to him. And secondly, Officer Vanderhoek also said regarding the taser, yes, the safety didn't work, but he also said that he realized he didn't have a target. There's the backpack that the man was wearing, the sweatshirt. Officer Vanderhoek had tried a taser, and it had not worked. And so it wasn't just that the safety was on. It was that in that minute when the safety – the second when the safety didn't work, he also realized it wasn't the best option because it already hadn't worked and the situation was getting more and more dangerous. Could it be part of the negligence consideration that he hadn't removed the safety? I don't think it would because of his statement that it was for both reasons. And I think that both reasons are probably correct because there was little to no reaction to the initial taser. Frankly, had he been able to use the taser and gotten involved in that, Officer Vanderhoek might have been stabbed in the meantime. I think it worked out to Officer Vanderhoek's best safety that the taser didn't work and that he switched to the alternative means of force. I don't think it goes to negligence because there were multiple reasons for his not using the taser. And in addition, there's no evidence that it would have provided any different result. He was on methamphetamine drugs and the prior taser hadn't worked. Could you answer my question about hindsight? So I'm curious about what California law says about this. Can we take into account that he was on methamphetamine rather than just mentally disturbed? I don't know that California treats that any differently. And I don't think that there was really no evidence of that in any event. What do you mean there was no evidence of that? I'm just not sure. The plaintiff keeps citing to the mumbling as if that's conclusive proof that someone has a mental disorder or is on drugs. And in reality, this is a one-minute event where it's possible the man was mumbling for half of that while running at the officers. Wasn't the original call about someone sort of waving in the air, I mean, wasn't it sort of erratic conduct in the first place that led to this call? Not like he's attacking people, but he's kind of acting crazy? Well, as Judge Coe said in her order, it was that the knife was being stabbed in the air. That's not erratic behavior. Is that what the call said to the police? The caller, what Sergeant Santos was told was that it was a high-risk, dangerous situation. There was a student that later said that, or may have given the information to the dispatcher, that he thought the man might be off his medications. But that information was never transmitted to the two officers. All they ever knew was that there was a man who was resisting arrest, and once he had a knife in hand, was mumbling. Wait, he was already resisting arrest? Who had tried to arrest him earlier? Resisting arrest at the scene with Sergeant Santos and Vanderhoek. For the original incident, all they knew was that there was a dangerous man who had been using a knife on campus. There was nothing about erratic behavior or anything of that nature that the officers were told. So what they're coming into is a situation where there's a dangerous man who has been on campus stabbing a long knife in the air. They find this man. But they don't know that either, right? All they know is there's a man with a knife on campus? Yes. From what you're saying the call said? And when they get there, he originally complies and then has the knife back in his hand. And from there on, he does not comply with a single command that was given to him. He has the knife. He stands back up. He's told to drop it the whole time. They try to use alternative force with Officer Vanderhoek's taser, and he keeps coming in Officer Vanderhoek's direction. He holds the knife the whole time. He doesn't drop it. And he keeps running in his direction. That's what the video makes clear. Could you tell me again what your theory is about why it wouldn't have helped if Officer Santos's taser had worked? Because Officer Vanderhoek's taser already had not worked. There's no evidence we have that with the plaintiff's heavy sweatshirt and with his backpack and with Sergeant Santos being behind Mr. Lopez, that even had he been able to use the taser, that it would have had any effect. And not only was there no evidence it would have had any effect because it already hadn't, even from the front, which is how Officer Vanderhoek tased him, Sergeant Santos himself had come to that conclusion. When he had the second to realize that it wasn't firing, he also thought, there's no target here. There's no skin. There's nowhere I can get this taser in a spot that's going to be worthwhile. And, frankly, from how fast the video was moving and how fast Mr. Lopez was moving towards Officer Vanderhoek, I think had he done a second ineffective taser shot, we'd have a very different sad ending to this story. So just going back to the very beginning, the only evidence about Sergeant Santos's intent was that he was afraid for Officer Vanderhoek. There's no assertion in any way that he only shot because or no evidence in the deposition in any way that he shot because he was told to shoot. Is that right? No. And Sergeant Santos is the commanding officer, so I don't see how that would have entered the calculus. But in any event, both depositions make clear that both officers felt Officer Vanderhoek and Sergeant Santos's life were in danger. There's no conflicting testimony on that point. They both thought his life was in danger when the shot was fired. And he shot only twice, just to stop him, and immediately administered first aid. Did you file a Daubert motion to get rid of the expert testimony of the plaintiffs? No. Was there any motion to strike of any sort that testimony? No. However, are you speaking about Expert Norris, the ballistics expert? No, I'm talking about Clark. Clark. No, there was no testimony about Clark. But there are two or three other cases where Clark's testimony has been given the weight it's due, which is that when there's no evidence of a mental disorder, you can't question someone's tactics for the weight. But so why isn't it a jury question whether there was evidence of a mental disorder? Why isn't it a jury question whether to believe their expert versus yours? I'm still confused about it. I mean, you didn't even attempt to strike this expert, so how is there no fact dispute on negligence here? Because there is no evidence of a mental disorder. How can it go to the jury when there's no evidence of that? Couldn't a jury watch the video and think about that themselves? For a one-minute-long event, I think we're also underestimating how this happened. This took place over one minute with someone who initially complied. And over that 40 seconds, these officers are supposed to recognize a mental disability? I don't think there's any case in California or any other court that would put that obligation on an officer when you're dealing with someone with a foot-long blade. Thank you, counsel. Thank you. I just have a couple of points. First of all, regarding the seriousness of the crime, they have written in their briefs that it was a violation of Penal Code Section 626.10. That is actually having a dirk or dagger on a school campus. And that is a crime. However, it's not a felony. What it is is a crime against the public, and then depending on the facts, it can be charged as a felony or a misdemeanor. So Mr. Lopez's conduct was not necessarily at the felony level if he just possesses a stabbing instrument or a broken saw blade in this case. Secondly, Judge Sessions, you asked me about the argument I made. It's actually in our reply brief on page 10 and 11 where we talked about if this had been an immediate threat to Officer Vanderhoek's life at the time that he was running in that direction and towards the street, why would he attempt to tase him and have his tase route and then not raise his firearm until he hears the command from Officer Vanderhoek to do so? And what's also interesting is if you look at Apelli's brief, Officer Vanderhoek, as you're attracting, has his firearm out. And he's not shooting at that point. He's asking Sergeant Santos to do so. So anyway, I just wanted to address those two points. He's busy retreating at that point. I'm sorry? He's busy retreating. He's doing both. Actually, he had put his paser down and grabbed his firearm and was retreating. But if you look at the photograph in Apelli's brief, it'll show you the angles where they're at and the fact that he's holding his firearm. And this is at the time that Sergeant Santos, from behind, is shooting. A related question. At one point, you made this claim that there's some ballistic expert who testified that perhaps Mr. Lopez was falling at the time that he was shot. Is that no longer? No. That's also, yes. That's also. It's in the record. It wasn't one of the issues that we raised on appeal. But it's in the record because of the trajectory of the bullets being in an upper trajectory that Mr. Lopez. The only way that could have occurred from being shot in the back is that he'd been falling forward. That is in the record. That's not an issue that we necessarily address in the brief. Okay? Thank you. Thank you, Counsel. The case is submitted.
judges: Clifton, Friedland, Sessions